DAVID EISENBERG
**DAVID EISENBERG, P.L.C.**
3550 N. Central Avenue, Ste. 1155
Phoenix, Arizona 85012
Arizona State Bar No. 017218
Telephone: 602.237.5076
Email: david@davideisenbergplc.com

Attorney for Defendant Antoshanna Simmons

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>v.<br>Antoshanna Simmons,<br>Defendant. | CR-21-00775-PHX-DWL<br>**DEFENDANT'S SENTENCING MEMORANDUM**<br>**(Sentencing Set for January 23, 2023)** |

The Defendant Antoshanna Simmons, by and through undersigned counsel, respectfully submits the Defendant's memorandum on sentencing in which she proposes a sentence of five years probation, no fine and all other terms and conditions proposed by the United States Probation Office (USPO) in its Final Presentence Investigation Report (PSR, Doc.79). This outcome complies with the sentencing factors in 18 U.S.S.C. § 3553(a), particularly those pertaining to the history and characteristics of Ms. Simmons, and they are necessary, but no greater than required, to fulfill all of the sentencing factors.

The following addresses the most relevant sentencing factors as they pertain to Ms. Simmons.

**1. <u>Nature and Circumstances of the Offense</u>**

This case consists of listing the wrong address on ATF Forms 4473 at the time Ms. Simmons purchased firearms. From May 19, 2020 through June 17, 2021, Ms. Simmons bought 17 firearms from two vendors in Phoenix, Tombstone Tactical and Shooter's World. On the relevant 4473s, she listed 4201 N. 35th Avenue, Apartment 317, Phoenix, AZ 85017 as her residence. (Doc. 79, ¶ 6.) These purchases included four firearms, which law enforcement

seized at the scene of crimes in the Los Angeles and Inglewood, California vicinities. The time elapsing from date of purchase to date of confiscation ran from 56 to 163 days. (*Id.*, ¶ 7.) There is no evidence that Ms. Simmons was present at the scene of any of the crimes, that she transferred the firearms to the individuals or associates that possessed them at the time of their seizure or that she was aware they would be used for criminal purposes.

The government seeks to associate Rahim Harris, the boyfriend of Ms. Simmons' sister, with the Defendant in jointly undertaking the purchase of firearms under false pretenses. There is some relevance of this attempted connection to the appropriate sentence in Ms. Simmons' case, but it is not the inference the government seeks to draw. The evidence does not show that the two were working together. Rather, the probation sentence imposed in Mr. Harris' case should be the same given to Ms. Simmons.

The connection between the two defendants is based on an incident occurring on June 18, 2021, when both Mr. Harris and Ms. Simmons went to the same Tombstone Tactical store at the same time. Ms. Simmons bought three firearms, and Mr. Harris picked up five firearms that the store had put on hold when he attempted to buy them at a previous time. The two arrived at the store in separate cars, but the occupants of both vehicles talked to each other in the parking lot before and after Mr. Harris and Ms. Simmons went inside the store. (*Id.*, ¶ 5.) The Tombstone store produced no video or other evidence that Ms. Simmons accompanied Mr. Harris during his initial visit to purchase the firearms. The video that Tombstone did provide does not show that the occupants of the two vehicles tried to ignore each other outside the store, which makes the argument that they tried to avoid each other in the store not only a matter of speculation but it runs contrary to what the two would have done if they were engaged in a collective effort to falsify 4473s: they would not have appeared at the same store on the same date at the same time.

According to a report of interview, ATF Agents contacted Mr. Harris on June 18, 2021 concerning his purchases. They told him that two of the firearms he purchased had been recovered in California (and that a total of three firearms had been recovered). Mr. Harris

produced the five firearms he bought from Tombstone the day before. At that time, "Harris stated that SAs could take these firearms and he would 'just go buy more.'" The agents also asked him if he knew a particular man they suspected had been buying firearms illegally. Mr. Harris denied knowing this individual, but the agents told him he had been seen interacting with the man at an FFL while purchasing firearms. (ATF Report of Investigation # 11, dated June 18, 2021, ¶¶ 16, 20, 21.)

Mr. Harris was the sole defendant charged in CR-21-772-PHX-SMB with five counts of listing a false address on Forms 4473. On June 1, 2022, he entered a plea agreement with the government which contained stipulations including that his sentence would not exceed the low end of the guideline range but if the range was higher than 12 months, the low end would be no greater than 12 months and 1 day and that he could argue for a variance or downward departure, that the base offense level would be 12 and that four levels would be added because 22 firearms were involved. (CR-21-772, Doc. 35, ¶ 3.) He was sentenced on September 9, 2022 to 48 months probation. (Doc. 79, Related Case, p. 2.) These events are addressed further below.

As part of their investigation, the agents determined that Jerron Haynes lived at Tamarak Gardens apartments on 4201 N. 35th Avenue in Phoenix in Apartment 328 from 04/27/20 to 02/01/21 and Ms. Simmons was his girlfriend during this time. (Doc. 79, ¶ 9.) Ms. Simmons has maintained that she lived with Mr. Haynes in Apartment 328, a unit for which she paid the Cox Communications and Salt River Project utility bills during part of the time she resided in that apartment. This is born out by the certifications and documents from the Custodian of Records for Cox, which provides that the attached record relates to Ms. Simmons' order for new internet service at 4201 N 35th Ave 238 during an unspecified time period and from the Custodian of Records for SRP, which discloses a bill for $2,447.70 to Antoshanna Simmons at 4201 N 35th Street AP 328 for service from April 27, 2020 through February 17, 2021. (Exh. 1.) Moreover, Tamarak management informed ATF agents that Mr. Harris, Ms. Simmons, her sister and their mother lived in various apartments at various times in the complex. Management stated that Ms. Simmons moved out of Apartment 328 in approximately February 2021 and that

the family had previously resided in Apartments 322, 228 and 317 (Management also erroneously declared that Mr. Harris was related to the Simmons' sisters.) (Bates 000026, ¶ 8.) Jerron Haynes is the father of two of Ms. Simmons's children.

The PSR makes much of the agents' attempts to locate and talk to Ms. Simmons concerning her firearms purchases. (Doc. 79, ¶ 8.) However, it does not disclose that when ATF tried to get Ms. Simmons to come to its office to show them the firearms, Ms. Simmons "stated she has never heard of ATF requesting to see firearms, and that the whole situation sounded fake." (Bates 000026, ¶ 6.) In any event, Ms. Simmons turned herself in to the U. S. Marshals in January 2022, when she heard they were looking for her. The government has maintained that it could not find her. This is not entirely the case. It did find her when it executed an arrest warrant by simply going to her mother's residence, of which it had knowledge, and informed her that a warrant was out for her daughter. The next day, Ms. Simmons called the Marshal's office, agreed to meet the deputies and turned herself in. Upon arraignment, she was released, and since then, she has complied with the conditions set for her supervision, including reporting as directed, testing negative for controlled substances (aside from her initial positive test for THC), and staying employed. (Doc. 79, ¶ 2.)

As for the firearms that the Defendant purchased, she took some of them to firing ranges to shoot. Ms. Simmons paid for the shooting by debit card, which had the same address as the Arizona identification card she used to buy the firearms. She stopped shooting when her pregnancy started, which was about August of 2019. She sold other firearms she bought through "Armslist," which according to *Wikipedia* is a classified advertisement website with sections devoted to firearms, accessories and firearms related materials. Further according to *Wikipedia* "Armslist has drawn criticism and support due to it facilitating the legal sale of firearms between individuals online."

Evidence also shows that Ms. Simmons bought firearms as a gift. Kevin Sharp, a Tombstone manager and a witness called by the government, testified that he recalled a transaction occurring on August 16, 2020, which is Count 5 of the Indictment. He testified that he remembered that

Ms. Simmons came in with a man and several others in a group. There may have been as romantic relationship between the man and Ms. Simmons. She looked at colorful, inexpensive firearms and eventually bought one along with a laser beam device that cost more than the handgun. Simmons told him she was going to give it to the man as a gift. Later, Mr. Sharp ran a background check on the man, who he identified as Jerron Haynes. Armed criminals would not be interested in a colorfull firearm

At one time, Ms. Simmons did live at one time in Apartment 328,. but she failed to change the apartment and ultimately the street location itself. There is no evidence, however, that she failed to correct her identification in order to hide from ATF. Ms. Simmons did not change her Arizona identification when she moved, an act that frequently occurred in her life. Given all the circumstances of this case, this failure is not an omission that should result in prison

There is no identifiable victim and no indication that the Defendant impaired or impeded justice. (*Id.*, ¶¶ 12, 13.)

**2. Kinds of Sentences Available and The Guideline Calculation**

The Defendant agrees with the USPO on both the applicable statutory range and guidelines calculation for sentencing purposes: the relevant statute pertaining to the conviction in this case provides for a sentence of 0 to 5 years, and the guideline range is 21 to 27 months. (*Id.*, ¶¶ 52, 53.)

The guidelines are straightforward. Ms. Simmons has no criminal history, including juvenile adjudications, adult convictions. Also , there are no arrests, detainers or pending cases. (*Id.*, ¶¶ 29-33.) Accordingly, she has a Criminal History category of I. The total offense conduct is also straight-forward. There is an arbitrary base level of 12 and 4 levels are added because of the 12 firearms she purchased using the same Arizona identification card. This comes to a total offense level of 16.

The USPO recommends a variance in sentencing of 12 months and one day, to be followed by three years of supervised release. It provides that a sentence within the guideline range may be greater than necessary because it is Ms. Simmons first felony conviction; it was a non-violent

offense; she has no known criminal history; she represents a minimal risk to re-offend and to bring harm to the community; she has remained employed; she has a supportive family; she has complied with the terms of pretrial supervision ever since her arrest one year ago; and, she needs mental health treatment. (*Id.*, ¶ 71, Justification, p. 16.) [1/]

**3. <u>History & Characteristics</u>**

Ms. Simmons has a closely knit family, including her mother, who raised her, and three sisters, two of whom live in the Phoenix area. She has four children who live with her, twin daughters and two other children by Jerron Haynes (*Id.*, ¶¶ 35, 36.)

However, she has had a difficult time in other respects. She has had little contact with her father since the 9th grade and moved often as a child. She has seen several traumatic acts of violence, including the commission of a suicide and the shooting of several individuals. Recently, the John C. Lincoln Medical Center medical staff diagnosed her with a blood disorder. As she disclosed to the USPO, she often feels weak, faints, and has fevers. She has also been diagnosed with generalized anxiety disorder and adjustment disorder with depressed mood, as well as PTSD. Three years ago, she tried to take her own life by overdosing on 50 oxycodone pills which had been prescribed for her following a cesarean section. She was in the hospital for two weeks at Abrazo Central Campus. In May, 2022, she had suicidal ideations. (*Id.*, ¶¶ 39-42.)

Further on the positive side, Ms. Simmons graduated from high school through an on-line program and has tried to stay employed, mostly at call centers. Although she smoked marijuana in the past, she has not used it in a year, having been abler to stop on her own, and she has no other illicit drug use. (*Id.,* ¶¶ 43, 44.)

---

[1/] The USPO also recommends a fine of $1,000. It comes to the conclusion that the Defendant has the means to pay, in spite of the fact that she has a negative net worth of ($24,071) and significant liabilities, including over $14,000 in unpaid rent and over $8,000 in an outstanding auto loan. Apparently, however, the $450 in positive cash flow at the end of each month supports her where-with-all to pay the fine. (*Id.*, ¶ 51.) With due respect to the USPO, payments of even $50 per month over a 32 month period would be counter-productive, if for no reason other than she is the sole support of her four children and she has earned in the past about $17 per hour as a call center employee. The fine's over-reach as punishment is compunded by the $600 in special assessments fees that the Defendant must pay.

**4. <u>The Need for Restitution</u>**

As the USPO reports, restitution does not apply in this case. (*Id.*, ¶¶ 64, 65.)

**5. <u>Unwarranted Sentencing Disparities</u>**

As noted, Rahim Harris has been convicted of a similar offense under circumstances for which the government seeks to draw a connection to Ms. Simmons. The defense suspects that he had the same total offense level as Ms. Simmons, although he purchased more firearms. Some of the firearms he bought were, as the case with Ms. Simmons, found at the scenes of crimes. As is also the case with Ms. Simmons, there is no evidence that Mr. Harris engaged in criminal activity involving the use of weapons. The defense is not aware of Mr. Harris' criminal history, but it can be no more positive than Ms. Simmons'. There is, therefore, a need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. Mr. Harris received a sentence of probation. Ms. Simmons should receive the same sentence. She may have a higher guideline level than Mr. Harris, but her desire to go to trial should not, by itself, generate a more severe sentence.

**6. <u>Seriousness of the Offense, Respect for the Law, Just Punishment, Deterrence, Protection of the Public from a Defendant's Further Crimes</u>**

In recommending a sentence of 12 months and a day, the USPO noted that such a sentence would avoid unwarranted sentencing disparities, be sufficient to provide just punishment, deter Ms. Simmons from becoming involved in such conduct in the future, promote respect for the law and any future involvement in criminal activity would be prevented by the terms of supervised release. (*Id.*, p. 16.) The term proposed by the USPO would effectively result in a reduction of 15% of the sentence so long as the Defendant maintained good conduct while incarcerated. However, the factors of respect for the law, just punishment, deterrence and protection of the public can be achieved without the need for putting Ms. Simmons in prison. These factors, like the ones addressed above, are subject to the broadly stated principle that a sentence must be sufficient, but no greater than necessary, to reach the more specific factors set forth in Section 3553(a).

There is little to be gained by subjecting Ms. Simmons to prison. She has four children, all of whom live with her. She works. She has a debilitating disease which the doctors find difficult to treat. She has attempted to take her life and has from time-to-time experienced additional suicidal idideationeations. What this Defendant needs and what is best for society is that she be supervised so that she receive proper counseling and treatment and still be free to work and be at home for her children. Respect for the law includes compassion for the defendant in appropriate circumstances.

Respectfully submitted this 17th day of January, 2023.

***s/ David Eisenberg***

DAVID EISENBERG
Counsel for Defendant Antoshanna Simmons

I hereby certify that on January 17, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, as well as by email to:

Coleen P. Schoch, Esq.
Keith E. Vercauteren, Esq.
Assistant U. S. Attorneys

*s/ David Eisenberg*
David Eisenberg