GARY M. RESTAINO
United States Attorney
District of Arizona

COLEEN SCHOCH
Georgia Bar No. 366545
Email: coleen.schoch@usdoj.gov
KEITH E. VERCAUTEREN
Arizona State Bar No. 013439
Email: keith.vercauteren@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1500
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-21-00775-PHX-DWL (MTM) |
| Plaintiff, | |
| vs. | **UNITED STATES' SENTENCING MEMORANDUM** |
| Antoshanna Kenya Simmons, | |
| Defendant. | |

Defendant Simmons was convicted by a jury of making six purchases of 17 firearms from federal firearms licensees using knowing false statements about her residence. Four of the firearms that Defendant purchased were recovered by law enforcement in four separate crimes in Los Angeles and Inglewood, California. The United States recommends that Defendant receive a below-Guidelines sentence of 15 months' imprisonment on each count, to be served concurrently, followed by a term of 3 years' supervised release on each count, also to be served concurrently. This motion is supported by the following Memorandum of Points and Authorities and all matters of record.

The United States agrees with the Presentence Report calculations resulting in a Total Offense Level of 16, Criminal History Category I, and a Guidelines range of 21–27 months' imprisonment. It has no objections or corrections to the PSR.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    FACTS AND PROCEDURAL HISTORY**

Defendant was charged by indictment with six counts of violating 18 U.S.C. § 924(a)(1)(A), False Statement During the Purchase of a Firearm, a Class D felony offense. She proceeded to trial and was found guilty of making six firearms purchases from federal firearms licensees using knowing false statements about her address on the ATF Form 4473. The PSR correctly holds her responsible for purchasing at least 17 firearms by means of her false statements.

**A.  The Guns Defendant Purchased Using Her False Statements**

Defendant purchased 17 guns from Arizona FFLs that were inexpensive and identical or near-identical handguns in a variety of distinctive colors. These handguns are desirable to the criminal element because of their low price. Defendant typically paid $200-$300 for the firearms that she purchased, except for her last purchase for three handguns at $500 each. Their distinctive colors also made them desirable to criminals. Along with multiple black handguns, Defendant purchased a "tiffany blue" Ruger and a bright purple Taurus. While Defendant argues that no armed criminal would carry such guns, brightly colored guns may be specifically "ordered" by members of certain criminal street gangs. The Grape Street Crips is a criminal street gang based in the Watts neighborhood of Los Angeles. Members wear purple clothing and accessories in the same shade as the gun Defendant purchased.

Law enforcement has recovered four of the firearms that Defendant purchased in four separate incidents in Los Angeles and Inglewood, California. These firearms were recovered in (1) a search of the residence of an attempted murder suspect; (2) on the person of an armed robbery suspect at his arrest; (3) illegally concealed in the vehicle of a driver stopped for a suspended license; (4) illegally concealed in the vehicle of a driver arrested on two outstanding warrants.

**B.  Defendant Lied About Her Address Six Times**

Each time she made a purchase, Defendant knowingly lied on the federal form about

her address and certified under penalty of federal law that her information was true, accurate, and complete. Defendant knew that the address she was putting on the ATF Form 4473s was a lie, not only because she necessarily knew where she resided, but because she knew how to put her correct address on government forms. At the same time that Defendant was purchasing firearms with a false address, she purchased a car and registered to vote using a different address. Furthermore, it appears that Defendant could not afford the firearms that she purchased. She spent approximately $7000 in cash on six separate purchases of firearms, ammunition, and accessories. During the same time period, Defendant's boyfriend left an unpaid rent bill of $6300, and she left an unpaid electricity bill of $2500, both for an apartment that they allegedly shared. Defendant also purchased a car that was repossessed by the lender less than nine months later.

### C. Defendant Intentionally Evaded Law Enforcement

Defendant used a false address on the ATF Form 4473s to evade law enforcement. She conspired with at least one other individual—her sister's boyfriend, Rahim Harris—to traffic firearms and to use false addresses on the ATF Forms to facilitate that illegal conduct. Tellingly, Harris also used a false address to purchase firearms. In fact, he pleaded guilty to using a false address to purchase the firearms that he picked up while he and Defendant were in the gun store together, pretending not to know one another. Plea Agreement, *United States v. Rahim Harris*, 21-CR-772-SMB, Doc. 35 (June 1, 2022). Defendant and Harris coordinated their trip to the gun store, where Harris picked up several guns that he had paid for a few days earlier, and Defendant shopped for and purchased additional, similar handguns. Defendant and Harris arrived together in the parking lot and conferred outside the store with one another's drivers, but then pretended not to know one another while inside the store.

When questioned by ATF agents regarding her gun purchases, Defendant continued her pattern of evading law enforcement. She lied to ATF agents about where she lived, set up fake meetings with them, and claimed that they were merely impersonating ATF agents. In fact, Defendant knew that the person to whom she spoke was an ATF agent because the

very same agent had already met in person multiple times with both her sister, Antoinikka Simmons, and Harris three days before that agent contacted Defendant by telephone. After failing to appear at two meetings with ATF, both set at the time and place Defendant requested, Defendant stopped responding and could not be located.

After Defendant was indicted and a warrant issued for her arrest, ATF still could not locate her, and the warrant was assigned to the U.S. Marshals Service. A Deputy U.S. Marshall contacted all of Defendant's known family members, conducted repeated surveillance of their homes, and performed multiple ruses, all of which were all unsuccessful in securing Defendant's arrest. Ultimately, USMS executed an operation at the home of one of Defendant's sisters, where multiple witnesses were interviewed. Shortly afterward, another of Defendant's sisters arranged for Defendant's surrender in a Party City parking lot. Defendant's evasion of arrest for four months after her indictment wasted still more government resources. Her surrender in a parking lot also enabled Defendant to continue to conceal her true residence and current cellular telephone number from law enforcement.

## II.   UNITED STATES'S SENTENCING RECOMMENDATION

Based on the analysis below, the United States recommends that Defendant receive a below-Guidelines sentence of 15 months' imprisonment followed by a term of 3 years' supervised release. As calculated in the PSR, Defendant has a Total Offense Level of 16, Criminal History Category I, and a Guidelines range of 21–27 months' imprisonment.

### A.   A Sentence of 15 months' is Appropriate under § 3553(a)

The United States submits that 15 months' imprisonment is a fair and just sentence that is sufficient but not greater than necessary as required by 18 U.S.C. § 3553(a).

#### 1.   Nature and Circumstances of the Offense

The Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" when imposing a sentence. 18 U.S.C. § 3553(a)(1). The nature and circumstances of Defendant's offense call for a significant sentence. Defendant made six purchases of 17 firearms from federal firearms licensees

using intentionally false statements regarding her residence. Each time she made a purchase, Defendant knowingly lied on the federal form about her address and certified under penalty of federal law that the information that she provided was true, accurate, and complete.

Defendant lied on these forms in order to evade law enforcement because she was not purchasing these firearms for herself, but for the purpose of trafficking them to Los Angeles. Defendant did not have income to support these purchases. She also refused to show any of the firearms to ATF during the investigation and did not produce any of them at trial. Four of the 17 have already been recovered in crimes in Los Angeles and Inglewood, California. Defendant's conduct was not, as she asserts, a victimless crime. The guns that she purchased ended up on the street and in the hands of prohibited possessors. Her conduct enabled their crimes. Defendant also perpetuated the perception of Arizona as a source of illegal firearms and the use of Arizona businesses to obtain firearms to traffic to other locations. Defendant's conduct harmed society and endangered the citizens of Arizona and California.

### 2. Defendant's History and Characteristics

Defendant's history and characteristics weigh in favor of a significant sentence. While Defendant was 22 years old at the time of the crimes and has no prior criminal history, her pattern of evading law enforcement and lying to officers stalled an investigation into at least six people believed to be conspiring to traffic firearms from Arizona to California. It also resulted in the waste of government resources, as agents from multiple agencies repeatedly attempted to locate her. Finally, Defendant still has not accepted any responsibility for her conduct and instead continues to minimize her illegal actions.

### a. Initial Contact

When first contacted about her gun purchases, Defendant lied to ATF agents about where she lived and set up a fake meeting with them. When agents arrived at that meeting and she did not, Defendant deflected by claiming that the ATF agents were fake. She then

scheduled another meeting with them, this time at the ATF office to alleviate Defendant's purported concern that the agents were not legitimate. But instead of appearing for that meeting, Defendant stopped responding to the agent's calls and messages.

At the time, Defendant knew that the agents and their requests for information were not "fake." Her sister, Antoinikka Simmons and her sister's boyfriend, Rahim Harris, had raised the exact same concern to the exact same ATF agents earlier in the week. Agents had addressed those concerns by meeting in person at least three times with Antoinikka Simmons in a public place and at least one time with both Harris and Antoinikka Simmons and Harris at ATF's office. These in-person meetings with her family members occurred three and four days prior to Defendant's claim (using the same words that her sister had previously) that the ATF agents were fake and that she had never heard of law enforcement wanting to see weapons to verify that they were in the purchaser's possession. Defendant intentionally wasted government resources and stalled ATF's firearms trafficking investigation into Defendant and her co-conspirators.

### b.    Post-Indictment

Defendant was later indicted, and a warrant was issued for her arrest. Because Defendant had provided a false address her ATF Form 4473s and provided a false address to ATF agents over the phone, ATF could not locate Defendant to arrest her, and the warrant was passed to the United States Marshals Service. The USMS spent four months attempting to locate Defendant, interviewing her associates, and conducting surveillance. Defendant's evasion of arrest wasted additional government resources.

From September to January, a Deputy U.S. Marshal interviewed all of Defendant's known family members, conducted repeated surveillance of their homes, and performed multiple ruses. All of this was unsuccessful in securing Defendant's arrest. In the fall, Antoinikka Simmons informed USMS that Defendant knew of the warrant and was likely evading apprehension. Ultimately, the USMS executed an operation at the home of Antatanna Simmons, another of Defendant's sisters, and again interviewed multiple members of her family using more intimidating tactics. Shortly after this, Antoinikka

Simmons contacted USMS and stated that Defendant wished to surrender. Antoinikka coordinated Defendant's surrender in a Party City parking lot. By surrendering in this manner, Defendant concealed from law enforcement her current residence and current cellular telephone number. Defendant also arrived at the surrender location without any cellular telephone, thus preventing further investigation into her firearms trafficking or evasion of law enforcement.

Defendant's continued pattern of attempting to evade law enforcement and responsibly for her illegal conduct wasted the resources of multiple government agencies. Her history and characteristics weigh in favor of a sentence of 15 months' imprisonment.

### c.    Defendant has Not Accepted Any Responsibility

Finally, Defendant still has not accepted any responsibility for her own actions. She seeks a sentence of probation because Mr. Harris, who purchased 22 known firearms, received a sentence 36 months' probation. Defendant and Mr. Harris are in very different positions. Harris promptly accepted responsibility for his conduct, pled guilty to a violation of 924(a)(1)(A), and his offense level was decreased as provided in his plea agreement. In contrast, Defendant proceeded to trial, did not obtain any agreements from the government about her sentence, and still has yet to accept responsibility for her crimes. A sentence of probation would create an unwarranted sentencing disparity between Defendant and Mr. Harris, and between Defendant and all other individuals who have accepted responsibility for violations of 924(a)(1)(A).

### 3.    Seriousness of the Offense

Defendant's sentence must reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). Defendant diverted 17 guns from legal to illegal commerce, and at least four of those guns have already been found being illegally carried, including by prohibited possessors. Defendant's conduct endangered the citizens of both Arizona and California. Her sentence must reflect the seriousness of this conduct, including the negative impact that firearms trafficking has on society as a whole. A sentence of 15 months' imprisonment properly

reflects the seriousness of Defendant's conduct, promotes respect for the law, and provides just punishment for the offense, without being greater than necessary.

### 4.    Adequate Deterrence

The sentence must also "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Defendant's sentence must be sufficient to deter Defendant and other would-be firearms traffickers and straw purchasers. A sentence of 15 months' imprisonment is sufficient but not greater than necessary to do so.

### 5.    Protecting the Public

The Court should also consider the need "to protect the public from further crimes of the defendant" when imposing a sentence. 18 U.S.C. § 3553(a)(2)(C). The Court should give the number and type of the firearms that Defendant trafficked significant consideration. Defendant made six purchases of 17 firearms using knowing false statements. Four of these firearms were recovered by law enforcement in Los Angeles and Inglewood, California. Since those purchases, Defendant repeatedly evaded law enforcement, including for months after a warrant was issued for her arrest. Finally, and most importantly, Defendant has also not accepted responsibility for her crimes. For all these reasons, the United States believes that a sentence of 15 months' imprisonment is sufficient but not greater than necessary to protect the public from Defendant's future crimes.

### 6.    Providing Needed Correctional Treatment

Finally, the sentence imposed should provide Defendant with necessary and effective educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a)(2)(D). Defendant has a history of twice-daily marijuana use and also needs mental health treatment. Defendant can receive treatment for both issues while in prison. Successful treatment could also help to protect the public from her future crimes.

### B.    A 3-Year Term of Supervised Release is Appropriate under § 3583(c)

The United States recommends that Defendant be placed on supervised release for three years. This term is warranted by the nature and circumstances of Defendant's offense.

*See* 8 U.S.C. § 3583(c) (referencing 18 U.S.C. § 3553(a)(1)). It is also necessary to protect the public from further crimes by Defendant and to deter her from committing additional crimes in the future. *See id.* (referencing 18 U.S.C. § 3553(a)(2)).

## III.    CONCLUSION

The United States recommends that Defendant receive a below-Guidelines sentence of 15 months' imprisonment on each count, to be served concurrently, followed by a term of 3 years' supervised release on each count, also to be served concurrently. Her conduct was knowing and intentional. She diverted 17 guns from legal to illegal commerce, and at least four of those guns have already been found being illegally carried, including by prohibited possessors. Defendant's conduct endangered the citizens of both Arizona and California. Moreover, she has yet to admit her conduct and continues to minimize her actions and their affect on society.

Respectfully submitted this 20th day of January, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Coleen Schoch*
COLEEN SCHOCH
KEITH E. VERCAUTEREN
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of January, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

David Eisenberg, *Attorney for defendant*

*s/ J. Brown*
U.S. Attorney's Office

- 9 -